UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ANA HERNANDEZ | No. 25 CR 7<br><br>Judge Lindsay C. Jenkins |

**GOVERNMENT'S SENTENCING MEMORANDUM**

Upon signing the Fair Housing Act, President Lyndon B. Johnson declared, "Fair Housing for all, all human beings who live in this country, is now part of the American way of life." Department of Housing and Urban Development, *Hud Commemorates Fair Housing Month and 50 Years of the Fair Housing Act*, April 2, 2018, available at https://archives.hud.gov/news/2018/pr18-025.cfm. This right is fundamental and applies regardless of one's citizenship, national origin, or ethnicity. Chicago, in particular, is one of the most diverse cities in the United States, where individuals of many different backgrounds live and coexist---including people from all around the world. On March 16, 2024, defendant threw a lit Molotov cocktail onto her neighbors' porch to communicate a different message. The incendiary device, as well as a note she left afterwards, told her neighbors:

> Damn Venezuelans, screw your mothers. We do not want you in the neighborhood. Go back to your country, you dogs sons of whores. You can go the easy way or the hard way. Viva Mexico you faggots.

After the incident, her intended victims (Victim-1 and Victim-2) as well as the owner of the building (Victim-3) suffered emotional harm, stress, and fear. This Court's sentence should reflect the seriousness of the defendant's conduct, as well as the

significant harm suffered by the victims. A significant sentence would also deter others who would seek to discriminate on the basis of national origin, and, like defendant, to back up that discrimination with violence. For these reasons, the government respectfully requests that the Court impose a sentence within the guidelines between 33 and 41 months of imprisonment.

## BACKGROUND AND OFFENSE CONDUCT[1]

In 2024, Victim-1 and Victim-2, who were of Venezuelan origin, lived on the first-floor apartment of a building in Chicago. Victim-3 both owned and resided in that building. At the time, defendant resided in an immediately adjacent building, and the two buildings were separated by a fence. In the months leading up to March 2024, Victim-1 and Victim-2 had several negative interactions with defendant, including one incident in October 2022 when defendant told Victim-1, in sum and substance, "This isn't Venezuela. You should learn to behave." Defendant called the police on Victim-1 and Victim-2 on numerous occasions reporting loud music. PSR ¶ 9. On two occasions, the tires on Victim-1 and Victim-2's vehicle were slashed. *Id*. Although it is unclear what role, if any, defendant played in the tire-slashing, one of the incidents occurred after defendant's husband made a negative comment to

---

[1] The information in this section is derived from the evidence presented at trial, the PSR and other materials provided to the Probation Department in connection with the preparation of the PSR. At sentencing, a district court may rely upon information contained in a PSR as long as the information is well supported and appears reliable. *United States v. Salinas*, 365 F.3d 582, 587 (7th Cir. 2004).

Victim-1. On another occasion, defendant told Victim-3 that "those Venezuelan people are going to burn your building." *Id.*

On March 4, 2024, an unidentified individual threw two Molotov cocktails onto the back porch of the building where Victims-1, 2 and 3 lived. One of the Molotov cocktails caused a rug on the porch to ignite. PSR ¶ 10. Although the incident occurred in the middle of the night, the tenants were able to put out the fire. *Id.* As a result, the victims installed security cameras in the rear porch area. *Id.*

On March 16, 2024, at approximately 11:05 a.m., defendant was captured on video approaching the fence. Defendant lit the Molotov cocktail, and as she maneuvered the incendiary device, a small amount of liquid spilled out, which caused a small fire near the fence. PSR ¶ 11. Defendant then threw the Molotov cocktail toward the stairs of the back porch, which also caused a fire to ignite. Ultimately, the fire burned itself out. *Id.*

Approximately 40 minutes later, defendant placed a note on the windshield of the vehicle belonging to Victim-3. The derogatory note was written in Spanish, but the translation is quoted above. Videos of defendant throwing the Molotov cocktail and placing the note are attached hereto as Exhibit 1 and Exhibit 2.

At the time of the fire, Victim-1 and Victim-2 were asleep at home, and only learned of the incident after Victim-3 found the note on her vehicle, and they checked the security footage. PSR ¶ 14. The victims reported the incident to the Chicago Police Department ("CPD"), who arrested defendant in April 2024. During an

interview with CPD, defendant admitted to throwing the Molotov cocktail and stated that she did not intend to kill anyone. Instead, according to defendant, she threw the Molotov cocktail to try to scare her neighbors into leaving the area. PSR ¶ 14.

## GUIDELINES CALCULATIONS

The government agrees with the guidelines calculation in the Presentence Investigation Report ("PSR") submitted by the United States Probation Office ("Probation"). The base offense level for the counts of conviction is 20, pursuant to U.S.S.G. § 2H1.1(a)(1) and 2K1.4(a)(2)(C), because the offense endangered a dwelling. Pursuant to U.S.S.G. § 3A1.1(a), the offense level is increased by 3 levels because defendant intentionally selected the victims and property as the object of the offense of conviction because of the actual or perceived national origin and ethnicity of Victim-1 and Victim-2. After a three-level reduction for acceptance of responsibility, the offense level is 20. Defendant has no criminal history, and therefore, her criminal history category is I. Therefore, the advisory guidelines range is 33 to 41 months of imprisonment.

## SENTENCING FACTORS SET FORTH IN 18 U.S.C. § 3553(a)

Section 3553(a) requires the Court to impose a sentence that is "sufficient, but not greater than necessary," to comply with the purposes of sentencing. In order to determine the sentence to impose, the Court must consider the statutory factors listed

in § 3553(a)(1)-(7).[2] One of those factors is the advisory range set by the Sentencing Guidelines, and another is the Sentencing Commission's policy statements. Although the Sentencing Guidelines are advisory only, "[a]s a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). For the reasons set forth below, consideration of the § 3553(a) factors reflect that a sentence of 210 months' imprisonment is sufficient but not greater than necessary to achieve the goals of sentencing.

## I.     Nature and Circumstances of the Offense

The nature and circumstances of the offense are serious and warrant a significant sentence of imprisonment. The use of Molotov cocktails is "exceedingly dangerous," and posed a "very significant risk to the safety of others." *United States v. Chowdhury*, No. 23-6716, 2024 WL 4647132 at *2 (2d Cir. Nov. 1, 2024) (affirming above-guidelines sentence where defendant, *inter alia*, threw a Molotov cocktail onto a porch of a victim's home). Here, the danger is particularly acute, as defendant caused a fire on the porch while Victim-1 and Victim-2 were sleeping in their apartment, mere feet away. Defendant's conduct "could have easily caused the

---

[2] Those purposes are the need for the sentence "(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

victim's residence to catch fire with people trapped inside," creating a real risk of injury or death. *Id.* Further, the victims' building is located in a dense urban area, and a fire caused on the victims' porch could easily have spread to other buildings, endangering the lives of multiple people. *See id.* (considering as aggravating that Molotov cocktail thrown on victim's porch could have spread to four other homes).

Thankfully, the fire set by defendant burned itself out, and therefore, the victims did not suffer physical injury. However, as a result of defendant's conduct, the victims have suffered significant emotional distress. For several days after the incident, Victim-1 and Victim-2 were afraid to go outside. They suffered emotional distress, fear and stress. Victim-3 has relayed that she suffers from difficulty sleeping out of fear that she may die in her sleep.

Moreover, defendant selected her victims due to their national origin, making this offense even more serious. Indeed, bias-motivated crimes affect not only the particular victims, but stigmatize an entire community. *Wisconsin v. Mitchell*, 508 U.S. 476, 487-88 (1993) (noting that bias-inspired conduct is "thought to inflict greater individual and societal harm."). The seriousness of defendant's crime warrants a significant sentence within the guidelines.

## II.     History and Characteristics of Defendant

The government does not dispute that there are some mitigating factors in defendant's background, including that defendant does not have any criminal history, a difficult childhood, and medical and mental health issues. However, the fact that

6

defendant committed a bias-motivated crime and harbored discriminatory beliefs regarding her Venezuelan neighbors is aggravating, as described above. The government respectfully requests that any mitigation is outweighed by the seriousness of the offense and other aggravating factors.

**III.   The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, to Promote Respect for the Law, to Provide Just Punishment for the Offense, and To Provide Deterrence**

The sentence that this Court imposes should also reflect the seriousness of the offense, promote respect for the law, provide just punishment, and provide deterrence. A significant sentence of incarceration will send an clear message to those who harbor discriminatory beliefs that the use of violence against individuals selected on the basis of national origin will be punished with a significant sentence. Additionally, a serious sentence would send a message to the affected victims and their community that hate crimes will not be tolerated.

Hate crime data collected by the FBI reveals that anti-Hispanic or Latino hate crimes have remained fairly constant over the past five years, including approximately 1,142 offenses committed in 2024, and 1,086 offenses committed between January and November 2025. *See* FBI Crime Data Explorer, *Hate Crime in the United States Incident Analysis*, available at https://cde.ucr.cjis.gov/LATEST/webapp/#/pages/explorer/crime/hate-crime. In Chicago, anti-Hispanic/Latino hate crimes increased significantly after 2021, and have remained relatively high since then. *See* Chicago Police Department, *Hate*

7

*Crime Dashboard*, available at https://www.chicagopolice.org/statistics-data/data-dashboards/hate-crime-dashboard/; *see also* Albinson Linares, *Rise in Hate Crimes Includes a 'Significant Increase' Against Latinos*, NBC News, Nov. 3, 2023, available at https://www.nbcnews.com/news/latino/hate-crimes-latinos-see-significant-increase-rcna123211 (85% increase in hate crimes against Latinos in Chicago between 2021 and 2022). Bias-motivated crimes remain a pernicious problem in this District, and a significant sentence of incarceration is necessary to deter others who would target these groups.

Additionally, a significant sentence of imprisonment would communicate to the victim community that criminal conduct targeting Hispanics or Latinos will be taken seriously by the justice system, and that any sentence will reflect the harm suffered by their community.

## IV. <u>Supervised Release</u>

The government agrees with the Probation Office's recommendation to impose a term of supervised release in order to provide additional specific deterrence to the defendant and to assist with her rehabilitation following his custodial term of imprisonment. Consistent with the Seventh Circuit's guidance in *United States v. Thompson*, 777 F.3d 368 (7th Cir. 2015), and because of defendant's serious criminal conduct, the government concurs with Probation's recommendation that the term of supervised release be three years. In order to promote the sentencing objectives of deterring recidivism, protecting the public, and assisting in the defendant's

rehabilitation and reintegration into society, the government supports Probation's recommendation that the term of supervised release include the conditions set forth in the PSR.

## RESTITUTION

The government also requests that the Court impose mandatory restitution to Victim-3, who is the owner of the building burned by defendant. Pursuant to 18 U.S.C. § 3663A, restitution is mandatory because the offense of conviction is a crime of violence and Victim-3 has suffered a pecuniary loss. The government has the burden to establish the amount of the victim's losses by a preponderance of the evidence. *United States v. Cardozo*, 68 F.4th 725, 732 (1st Cir. 2023). However, "[t]hat burden is not a heavy one: as long as the court's order reasonably responds to some reliable evidence, no more is exigible." *Id.*

The government has requested that Victim-3 obtain an estimate for repair to the back porch, although that estimate has not yet been completed. Therefore, Victim-3's losses are not ascertainable at this time, and the government in a separate motion will be requesting that the Court set a date for a hearing for final determination of the victim's losses.

9

## CONCLUSION

For the reasons stated here, the government respectfully requests that this Court impose a within-guidelines sentence of 33 to 41 months' imprisonment followed by three years of supervised release, and restitution to Victim-3.

Dated: December 4, 2025          Respectfully submitted,

                                            ANDREW S. BOUTROS
                                            United States Attorney

By:    *s/ Jonathan L. Shih*
        JONATHAN L. SHIH
        Assistant United States Attorney
        219 South Dearborn Street
        Chicago, Illinois 60604
        (312) 353-5361
        jonathan.shih@usdoj.gov